Allen Hyman (California State Bar No. 73371)
LAW OFFICES OF ALLEN HYMAN
10737 Riverside Drive
North Hollywood, CA 91602
Phone: (818) 763-6289
E-mail: lawoffah@aol.com

Matthew F. Schwartz * *Pro Hac Vice Pending*
Brian S. Levenson * *Pro Hac Vice Pending*
SCHWARTZ, PONTERIO & LEVENSON, PLLC
134 West 29th Street, Suite 1001
New York, New York 10001
Phone: (212) 714-1200
E-mail: mschwartz@splaw.us
E-mail: blevenson@splaw.us

Oren S. Giskan * *Pro Hac Vice Pending*
GISKAN SOLOTAROFF & ANDERSON LLP
90 Broad Street, 10th Floor
New York, New York 10004
Phone: (212) 847-8315
E-mail: ogiskan@gslawny.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SA MUSIC, LLC, WILLIAM KOLBERT, AS TRUSTEE OF THE HAROLD ARLEN TRUST, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE, INC., AMAZON.COM, INC., AMAZON.COM SERVICES LLC, GOOGLE, LLC, and CLEOPATRA RECORDS, INC., <br><br> Defendants. | **COMPLAINT FOR COPYRIGHT INFRINGEMENT** <br><br> **JURY DEMAND** |

### Basis for Jurisdiction

1.     The Court has jurisdiction over the subject matter of this action against all Defendants pursuant to 28 U.S.C. § 1338(a) because this is an action for copyright

1

infringement arising under the Copyright Act of 1976, 17 U.S.C. §§ 101, 106, 115, 501, 602 *et seq.*

### Introduction

2. Plaintiffs are the legal and/or beneficial copyright owners of musical works authored by Harold Arlen one of the premier composers of American music.

3. Harold Arlen wrote or co-wrote some of the most popular modern songs, including *Over the Rainbow* from The Wizard of Oz and many other seminal works in the American songbook, including *I've Got the World on a String*, *Stormy Weather*, *The Devil and the Deep Blue Sea*, *Come Rain or Come Shine*, *Get Happy*, *Ill Wind* and *It's Only A Paper Moon*.

4. The Composition Chart annexed as Exhibit A provides a list of Plaintiffs' copyrighted compositions at issue in this case (the "Subject Compositions").

5. Harold Arlen's works have been recorded by the most prominent jazz and popular artists of all time, including Art Tatum, Art Blakey, Benny Goodman, Billie Holliday, Buddy Rich, Cab Calloway, Charlie Parker, Count Basie, Dean Martin, Dizzy Gillespie, Duke Ellington, Ella Fitzgerald, Etta James, Frank Sinatra, Fred Astaire, John Coltrane, Judy Garland, Lena Horne, Louis Armstrong, Miles Davis, Quincy Jones, Ray Charles, and Sarah Vaughan to name only a few. These monumental works of art are, quite literally, national treasures.

6. These and other recordings of Plaintiffs' copyrighted musical works have been pirated by the Defendants in this case. Defendants are all players in the digital music business that participate in, and jointly profit from, making digital phonorecord deliveries (*i.e.*, downloads) of pirated recordings of the Subject Compositions.

7. Digital phonorecord deliveries of musical recordings constitute a reproduction and distribution of the musical work embodied in the digital recording and require a license from the copyright owner of the musical composition, sometimes referred to as a "mechanical license."

8.    Defendants have failed to obtain any license that would authorize them to reproduce, distribute, or sell the recordings of the Subject Compositions identified on Exhibits B-D and, as a result, Defendants have infringed Plaintiffs' exclusive rights of reproduction and distribution of the Subject Compositions, under 17 U.S.C. §§ 106(1) and 106(3).

9.    Further, the activity of making digital phonorecord deliveries of pirated recordings of the Subject Compositions does not qualify for a compulsory license or as a covered activity under Section 115 of the Copyright Act.

10.    A list of the pirated recordings of the Subject Compositions that Defendants have reproduced and distributed without authorization, including by making digital phonorecord deliveries, thus far identified, is set forth in the Infringement Chart annexed as Exhibits B-D.

11.    All the recordings identified on Exhibits B-D are pirated. Plaintiffs have thus far identified over 3,000 pirated recordings of the Subject Compositions that have been separately reproduced and distributed as digital phonorecord deliveries by Defendants in their respective digital music stores as set forth in the Infringement Charts annexed as Exhibits B-D. Defendants have infringed these works in a concerted and distinct distribution chain.

### Defendants' Piracy is Massive and Flagrant

12.    Defendants have sold pirated recordings, provided by Cleopatra Records, of virtually every well-known recording artist from the 1930s through the 1960s, including Frank Sinatra, Ella Fitzgerald, Miles Davis, Louis Armstrong, Billie Holiday, Mel Tormé, Ray Charles, Lena Horne, and Judy Garland.

13.    The scope and flagrant nature of Defendants' piracy cannot be understated. Defendants have pirated world-famous recordings without any regard for actual ownership. For example, Lena Horne recorded and released Harold Arlen's Stormy Weather at least three times, first for the movie of the same title which, in

2001, was selected for the US National Film Registry by the Library of Congress as being "culturally, historically, or aesthetically significant." Horne first recorded Stormy Weather in 1942 and the track was released by RCA Victor as part of <u>Moanin' Low – Torch Songs by Lena Horne</u>:

 

14.     Defendants Apple, Amazon, and Google have offered for sale 20 different pirated versions of *Stormy Weather* provided by Cleopatra, which has no connection to – or rights in – the original recording.

15.     As another example, Ethel Waters' 1933 recording of *Stormy Weather*, originally released by Brunswick, is one of only 500 records selected by the Librarian of Congress to be part of the National Recording Registry as "culturally, historically, or aesthetically important, and/or inform or reflect life in the United States":



4

16.     Defendants Apple, Amazon, and Google have offered for sale seven different bootlegs of the Ethel Waters recording provided by Cleopatra under the Stardust imprint, including on the compilation album, 100 Vocal & Jazz Classics – Vol. 3 (1932-1934).

17.     This Stardust compilation album 100 Vocal & Jazz Classics – Vol. 3 (1932-1934) alone includes 8 bootlegged recordings of Arlen works: (1) *Stormy Weather* by Ethel Waters, (2) *Stormy Weather* by Duke Ellington, (3) *I Gotta Right To Sing The Blues* by Cab Calloway, (4) *I Gotta Right To Sing The Blues* by Benny Goodman, (5) *I've Got The World On A String* by Cab Calloway, (6) *I Gotta Right To Sing The Blues* by Louis Armstrong, (7) *Between The Devil and the Deep Blue Sea* by Louis Armstrong, (8) *Minnie the Moocher's Wedding Day* by Cab Calloway, and (9) *Kickin' the Gong Around by Louis Armstrong.*

18.     Until recently, the Stardust album 100 Vocal & Jazz Classics – Vol. 3 (1932-1934) was available in the online music stores of Apple, Amazon, and Google. Cleopatra had no right to distribute any of these recordings in the United States and never obtained authorization to distribute Plaintiffs' compositions.

19.     Another indication that Cleopatra is a massive bootlegger comes from its album art. Historically, record labels considered album artwork to be an essential part of the packaging and marketing and took great care to create album artwork commensurate with the music it accompanied. Not so with Cleopatra, which has often either stolen the album art and music wholesale or employed stock artwork for its bootlegged albums.

20.     For example, Cleopatra distributes an album on its Stardust imprint, Count Basie Swings and Joe Williams Sings, featuring the Harold Arlen standard *Come Rain or Come Shine*.

The original album was recorded in 1956 for legendary jazz label, Verve which is still legitimately distributing the album:




*Stardust*                                                                    *Verve*

21.    As another example, until recently, Apple, Amazon, and Google all offered two copies of the 1964 Ethel Ennis recording of Harold Arlen's classic, *For Every Man There's A Woman,* a legitimate Sony release and the Cleopatra version. The Amazon versions are depicted below with the Sony version, left, with RCA logo circled, selling for $1.29 and the Cleopatra version (Stardust Records) selling for $0.89:




**RCA single: $1.29**                              **Stardust single: $0.89**

6

22.    Defendants have also infringed entire albums dedicated to Plaintiffs' works. For example, Monmouth Evergreen released the Lee Wiley Sings Rodgers & Hart and Harold Arlen, which included eight recordings of Arlen works. Defendants copied the recordings and artwork (except for the Monmouth Evergreen logo) and offered the album for sale:

   

*Monmouth Evergreen*                                            *Master Classics*

23.    When Cleopatra has not stolen the artwork wholesale, it has compiled hundreds of tracks it pirated and used cookie-cutter stock album art. For example, Apple, Amazon, and Google were selling a series of as many as 17 albums called "100 Vocal & Jazz Classics":

         

7

24.   Apple, Amazon, and Google were selling many other compilations of 100+ tracks delivered by Cleopatra:

  

25.   A musical instrument, such as a trumpet or saxophone, resting in a cocktail glass has been a common stock theme serving as album art for the Cleopatra releases:

   

26.   Cleopatra also routinely employs album artwork re-using the same image of what appears to be a screaming baboon for an "Essential Jazz Masters" series of compilations of recordings by Jazz giants, including Quincy Jones:

   

8

27.     Cleopatra also regularly superimposes stock photographs of artists, including Ella Fitzgerald and Rosemary Clooney, over the same red curtain background for its album art as illustrated by the following examples:

  

28.     All of this should have made it obvious to Apple, Amazon and Google, that Cleopatra is operating a huge music piracy operation. Apple, Amazon and Google, had actual knowledge of, and/or willfully chose to ignore, the evidence of piracy and participated in the infringement on a massive scale.

29.     To put this case in context, in 2007, Jammie Thomas-Rasset, a single mother of four in Brainerd, Minnesota, was found liable, after three separate jury trials, for copyright infringement for using file sharing software that enabled the unauthorized downloading and distribution of 24 recordings by the Goo Goo Dolls and Def Leppard, among others. The juries awarded statutory damages in all three trials of up to $80,000 per infringement. The Eighth Circuit Court of Appeals ultimately affirmed statutory damages in the amount of $9,250 for each infringed recording, for a total award of $222,000. Ms. Thomas-Rassett declared bankruptcy as she had "no other option."

30.     In 2009, Joel Tenenbaum, a Massachusetts college student, who also used file-sharing software that permitted others to download 30 recordings by Limp Bizkit and Blink-182, was found liable and the jury awarded statutory damages of $22,500

per recording, for a judgment that totaled $675,000 forcing Mr. Tenenbaum to file for Chapter 7 bankruptcy.

31.     Unlike Ms. Thomas-Rassett and Mr. Tenenbaum who were not alleged to have sold their infringing recordings or profited from their conduct, Defendants in this case have engaged in massive music piracy operation for the purpose of generating profits from their sales of pirated recordings and by other means.

32.     The copyright infringement operation detailed in this Complaint is only the latest in a long line of piracy schemes that have plagued composers, publishers, and record labels since the inception of the music industry over 100 years ago, when the perforated rolls used by player pianos to perform musical works were pirated. See *Aeolian Co. v. Royal Music Co.*, 196 F. 926 (W.D.N.Y. 1912).

33.     As the technology employed by the music industry to reproduce musical works advanced, bootlegging efforts by music pirates kept pace. In the 1960s and 1970s, organized criminal enterprises engaged in record and tape piracy operations on a scale that is dwarfed by the infringing conduct explained herein. Like the Defendants in this case, the "tape pirates" and "record pirates" of years past unlawfully duplicated popular pre-existing recordings, and then claimed their liability was limited by the compulsory license provision of the 1909 Copyright Act, § 1(e).

34.     The landmark case *Duchess Music Corp. v. Stern*, 458 F.2d 1305 (9th Cir. 1972) settled the issue as to whether tape pirates could limit their liability for piracy under the compulsory license provision of the 1909 Copyright Act. In *Duchess*, the defendant tape pirate engaged in the same conduct identified in this Complaint, and claimed her conduct was lawful because the compulsory license provision of the Copyright Act authorized the reproduction and distribution of the musical works embodied on the recordings she pirated. The Ninth Circuit rejected the argument, stating, "She may not continue her piracy under the flag of compulsory licensing." The *Duchess* court concluded that the tape pirates' activity was ineligible for a compulsory

10

license and that reproduction of a musical composition on a pirated recording infringed the copyright in the composition, even when a compulsory license was claimed.[1]

35.     The holding in *Duchess* was codified when the Copyright Act was revised in 1976. The statutory bar against compulsory licensing of pirated recordings continues in the recent amendments to Section 115 of the Copyright Act, which provides that reproduction and distribution of pirated sound recordings is not a covered activity under Section 115 and is ineligible for a compulsory license.

36.     Defendants are nothing more than modern tape pirates and their conduct constitutes willful copyright infringement of the Subject Compositions in violation of the United States Copyright Act [17 U.S.C. §§ 101, 106, 115, 501, 602 *et seq.*] (the "Copyright Act").

### SA Music, LLC

37.     Plaintiff SA Music, LLC is a Nevada limited liability company and Sam Arlen is the sole member of the company.

### The Harold Arlen Trust

38.     Plaintiff William Kolbert is the Trustee of the Harold Arlen Trust (the "Harold Arlen Trust"), a trust created by Harold Arlen in his will.

### Apple

39.     Defendant Apple Inc. ("Apple") is a corporation organized under the laws of the State of California with a place of business at 1 Apple Park Way in Cupertino, California.

---

[1] The criminal conduct of "tape pirates" became a priority of the Attorney General of the United States, Edward H. Levi, in 1975 when the Justice Department determined that decisions reached by four Circuit Courts of Appeals, including the Ninth Circuit in *Duchess*, rendered tape pirates criminally liable even where the statutory royalty was tendered. See *Heilman v. Levi*, 391 F.Supp. 1106 (E.D.Wisc. 1975). Criminal copyright infringement sentences continue to this day. See *Matter of Zaragoza-Vaquero*, 26 I&N Dec. 814 (BIA 2016)(defendant sentenced to 33 months in prison and ordered to be removed from the United States for selling bootleg copies of music CDs at a Florida flea market, as a crime involving moral turpitude).

40.     Apple owns and operates the U.S. iTunes Store ("iTunes"), a digital music store that sells permanent downloads. iTunes opened in April 2003 and has been the largest music vendor in the United States since April 2008 and the largest music vendor in the world since February 2010. As of January 2017, the iTunes Store offered between 35-40 million recordings for download.

41.     Apple specifically selected and contracted with Cleopatra (directly and/or through a distributor) to provide its digital music catalog to be sold in its iTunes store on negotiated financial terms.

42.     Apple received all of the recordings of the Subject Compositions identified in Exhibits B-D from Cleopatra (directly and/or through its distributor) in California. Apple then reproduced, distributed and sold these pirated recordings of the Subject Compositions in iTunes, without any licenses, as permanent downloads among other types of digital phonorecord deliveries.

### *Amazon*

43.     Upon information and belief, Defendant Amazon.com, Inc. is a corporation organized under the laws of the State of Delaware with a place of business at 410 Terry Ave. N Seattle, WA 98109

44.     Upon information and belief, Amazon Digital Services LLC is a limited liability company organized under the laws of the State of Delaware with a place of business at 410 Terry Avenue N, Seattle, WA 98109.

45.     Upon information and belief, Defendant Amazon.com Services LLC is a limited liability company organized under the laws of the State of Delaware with a place of business at 410 Terry Avenue N, Seattle, WA 98109.

46.     On January 1, 2020, Amazon Digital Services LLC was merged into Defendant Amazon.com Services LLC pursuant to and in accordance with Title 6, Section 18-209 of the Limited Liability Company Act of the State of Delaware ("Section 18-209").

47.    Under Section 18-209, all liabilities and duties of Amazon Digital Services LLC attached to, and may be enforced against, Defendant Amazon.com Services LLC, as if they had been incurred or contracted by it.

48.    Amazon.com, Inc., Amazon Digital Services LLC, and Amazon.com Services LLC are united in interest and shall be referred to, individually and collectively, as "Amazon".

49.    Amazon has owned and operated a digital music store under various names since 2007, including "Amazon MP3" at launch and currently, "Amazon Music Store" or "Digital Music Store" that sells permanent downloads (collectively "Amazon Music Store"). Amazon currently offers a catalog of over 40 million tracks for sale as permanent downloads in the U.S.

50.    Amazon specifically selected and contracted with Cleopatra (directly and/or through its distributor) to provide the Cleopatra digital music catalog to be sold through the Amazon music store on negotiated financial terms.

51.    Amazon received all the recordings of the Subject Compositions identified on Exhibits B-D from Cleopatra (directly and/or through its distributor). Amazon then reproduced, distributed and sold these pirated recordings of the Subject Compositions in the Amazon music store, without any license whatsoever, as permanent downloads among other types of digital phonorecord deliveries identified herein.

### *Google*

52.    Defendant Google LLC ("Google") is a limited liability company organized under the laws of the State of Delaware with a place of business at 1600 Amphitheatre Parkway, Mountain View, California.

53.    Google has owned and operated a digital music store under various names since 2011, including "Google Music" at launch, and currently, "Google Play", all

selling permanent downloads (collectively, "Google Play"). Google Play currently has a catalog of over 40 million tracks for sale as permanent downloads in the U.S.

54. Google received all the recordings of the Subject Compositions identified on Exhibits B-D from Cleopatra (directly and/or through its distributor). Google then reproduced, distributed and sold these pirated recordings of the Subject Compositions on Google Play, without any license whatsoever, as permanent downloads among other types of digital phonorecord deliveries identified herein.

### *Cleopatra*

55. Upon information and belief, Defendant Cleopatra Records, Inc. ("Cleopatra") is a business entity organized under the laws of the State of California with a place of business at 11041 Santa Monica Blvd, Los Angeles, CA.

56. Upon information and belief, Cleopatra, without any authority, duplicated pre-existing  recordings embodying the Subject Compositions identified on Exhibits B-D, distributed them to Apple, Google, and Amazon for sale in their digital music stores without any license, and unlawfully authorized Apple's, Google's and Amazon's making of digital phonorecord deliveries in their respective stores as specifically set forth in the annexed Exhibit B-D.

57. Upon information and belief, Cleopatra is simply taking recordings of the Subject Compositions made by others without permission, duplicating and delivering them (directly or through a distributor) to Apple, Google, and Amazon under various label names, including but not limited to Goldenlane Records, Magic Gold Records, Master Classics, Screenland Records, Soundtrack Classics, Stardust, Stereo Magic Records, Classic Music International, Rolled Gold, Burning Fire, Vintage Masters, and Vintage Masters Inc., and authorizing Apple, Google, and Amazon to sell reproductions of the pirated copies.

58. Upon information and belief, Cleopatra has been Apple's, Google's and Amazon's single largest record label source of digital recordings for years. At times

Cleopatra has been the record label responsible for as much as 1% of the entire iTunes, Google Play, and Amazon Music Store catalogs, with over 500,000 recordings in each store, outpacing even the major record labels.

## Jurisdiction, Venue and Joinder

59.   This Court has personal jurisdiction over Defendants. All Defendants have purposefully availed or directed their infringing activities in California and in this district.

60.   Cleopatra's principal offices where it pirated the recordings on Exhibits B-D is located in this district. Further, Plaintiffs' copyright infringement claims arise out of (a) the reproduction and distribution of pirated recordings of the Subject Compositions listed in Exhibits B-D, occurring in the Central District of California, directly by Defendants and/or at their purposeful direction and availment, including the sale of pirated recordings of Subject Compositions to Central District of California residents; or (b) continuously and deliberately exploiting the forum state's market for its commercial gain, including through the use of targeted advertising and promotion.

61.   In addition, Apple and Amazon have employed licensing agent, Music Reports, Inc., in this judicial district, to obtain the necessary mechanical licenses for promotional streams of the bootlegged tracks identified in Exhibits B-D.

62.   The Google Play music service (then called "Google Music") was launched at a Los Angeles event in November 2011. Google has marketed the service in the Los Angeles area and, upon information and belief, Google Play has thousands of subscribers in Los Angeles. Google has multiple office campuses in Los Angeles.

63.   Venue is proper in this District pursuant to 28 U.S.C §§ 1391(b), 1391(c) and 1400(a) because Defendants are subject to personal jurisdiction in this Judicial District and have committed unlawful acts of infringement in this Judicial District. In addition, Defendants all have places of business in this Judicial District.

64.    Joinder of all claims in this case is proper under Fed. R. Civ. P. 20 because the claims all arise out of a series of transactions – the distribution by Cleopatra of pirated recordings of Arlen's works to Apple, Google, and Amazon.

65.    In addition, questions of law and fact common to all defendants will arise in this action including whether Cleopatra pirated the recordings of the Subject Compositions, whether Cleopatra distributed the pirated recordings of the Subject Compositions to Apple, Google, and Amazon, whether Plaintiffs own valid copyrights to each of the Subject Compositions, whether Defendants obtained any license for the reproduction and distribution of the pirated recordings of the Subject Compositions.

### Harold Arlen

66.    Harold Arlen (1905–1986) was a master composer and a highly regarded contributor to the Great American Songbook. The son of a synagogue cantor, Arlen was born in Buffalo, New York and emerged as one of the greatest American composers and songwriters, writing extraordinarily complex melodies and harmonies that remained accessible to a broad popular audience.

67.    Early in his career, Arlen wrote songs for musicals, including the entire scores for Broadway shows such as Cotton Club Parade, Life Begins at 8:40, Bloomer Girl, St. Louis Woman, Jamaica and Saratoga, among others.

68.    Arlen was also active in Hollywood and composed the music for some of the greatest film musicals of all time, most notably all the music in the 1939 motion picture classic "The Wizard of Oz," including *Ding, Dong! The Witch Is Dead*, *We're Off To See The Wizard*, and *Over The Rainbow*.

69.    *Over The Rainbow,* performed by Judy Garland in the film, won the Academy Award for Best Original Song. The song is one of the most enduring standards of the 20th century and was voted number one on the "Songs of the Century" list compiled by the Recording Industry Association of America and the National

Endowment for the Arts. The American Film Institute also ranked *Over The Rainbow* the greatest movie song of all time.

70.    Arlen successfully collaborated with the greatest Tin Pan Alley lyricists, including "Yip" Harburg, Ira Gershwin, Johnny Mercer, Leo Robin and Ted Koehler.

71.    Arlen's partnership with Harburg extended over many decades. With Billy Rose, they wrote *It's Only A Paper Moon* in 1933. They followed up with a successful revue, Life Begins at 8:40, which included lyric collaborations with his old friend, Ira Gershwin, including *Fun to Be Fooled*, and *You're A Builder Upper*.

72.    Arlen was inducted into the Songwriters Hall of Fame in 1971 and was honored with its highest accolade, the Johnny Mercer Award, in 1982. In 1996, Arlen was honored and memorialized by the U.S. Postal Service with his own stamp:



**SA Music LLC and the Harold Arlen Trust**

73.    Harold Arlen's son, Sam Arlen, acquired the U.S. copyrights in the Subject Compositions between 1989 and 2015, by termination notices that he, as sole statutory heir under Section 304 of the Copyright Act of 1976, served and filed with Copyright Office.

74.    In 2018, Sam Arlen assigned the U.S. copyrights in the Subject Compositions, as set forth in the Composition Chart annexed as Exhibit A, along with all accrued causes of action, to his company, SA Music, LLC. SA Music, LLC is the legal and/or beneficial owner of the U.S. copyright in certain of the Subject Compositions as identified in Exhibit A, along with all accrued causes of action.

75.     Plaintiff Harold Arlen Trust acquired the U.S. copyrights identified in the Composition Chart annexed as Exhibit A by operation of will and through termination notices served and filed by Harold Arlen during his lifetime with the U.S. Copyright Office under Section 304 of the Copyright Act of 1976.

76.     Plaintiff Harold Arlen Trust is the legal owner of certain of the U.S. copyright in certain of the Subject Compositions as identified in Exhibit A, along with all accrued causes of action.

### The Subject Compositions

77.     Plaintiffs are the owners of the musical compositions listed in the Composition Chart annexed as Exhibit A (collectively, the "Subject Compositions") that are the subject of this action.

78.     The copyrights for all the Subject Compositions have been registered and renewed with the U.S. Copyright Office, and each Subject Composition is the subject of a valid U.S. copyright. The Composition Chart annexed as Exhibit A identifies the copyright registration numbers for each of the Subject Compositions.

79.     Plaintiffs are the owner of a share in each of the Subject Compositions in the percentages listed on Exhibit A.

80.     As discussed more fully below, the Defendants have infringed, and are continuing to infringe, the copyright in each of the Subject Compositions by willfully reproducing and distributing them without a license.

### Background

81.     Before digital music distribution, recorded music was physically distributed through brick-and-mortar stores that were confined by the limitations of shelf space. Recording artists signed exclusive recording contracts with record labels in order to have their records pressed and distributed in national record stores.

82.     It is hard to imagine that a person walking into Tower Records, off the street, with arms full of CDs and vinyl records and claiming to be the record label for

18

Frank Sinatra, Louis Armstrong and Ella Fitzgerald, could succeed in having that store sell their pirated copies directly next to the same albums released by legendary record labels, Capitol, RCA and Columbia, and at a lower price.

83.    Yet, this exact practice occurs every day in the digital music business, where there is unlimited digital shelf space (there are 40 million recordings available on iTunes) and a complete willingness by the digital music stores like Apple to seek popular and iconic recordings from any source, legitimate or not, provided they participate in sharing the proceeds.

84.    The iconic status of the pirated recordings of the Subject Compositions at issue in this case cannot be overstated. Any list of the most popular singers and musicians of any period between 1930 and 1970 would be replete with the artists who have recorded Plaintiffs' musical works, some of them multiple times.

85.    All the recordings on the Infringement Chart (Exhs. B-D) embodying the Subject Compositions are pirated copies, or "bootlegs." Defendants' digital phonorecord deliveries of these pirated copies were all made without authorization from the copyright owners of the sound recordings or those who originally "fixed" them as required by Section 115 (discussed below), and the copyright owners of the Subject Compositions.

86.    Defendants all generate illicit revenue for themselves when these and other pirated copies are sold or distributed.

### The Pirated Recordings

87.    All the recordings identified in Exhibits B-D are pirated. Defendants have taken recordings of the Subject Compositions – in which they hold no rights – and reproduced and distributed pirated copies of them to the public, for profit, without authorization.

88.    Virtually all the recordings at issue in this case were originally made between 1930 and 1972.

89.     Since Cleopatra did not originally "fix" any of the relevant recordings, the only way for it to acquire the rights to duplicate and distribute them would be to purchase or license rights in these recordings.

90.     Upon information and belief, Cleopatra never acquired permission or the rights to reproduce or distribute any of these recordings from any person who lawfully fixed them or from the owner of the copyright in the sound recording. Cleopatra is simply taking previously released recordings and selling them as if they were the rightful owner. Apple, Google, and Amazon are knowingly duplicating Cleopatra's pirated sound recordings of the Subject Compositions and selling the pirated copies for profit.

**Defendants Have Infringed the Subject Compositions**

91.     The Infringement Chart annexed as Exhibits B-D sets forth each recording of the Subject Compositions thus far identified by Plaintiffs that Defendants have reproduced, distributed, stand/or made available for digital phonorecord deliveries in their stores.

92.     Each of the recordings identified in the Infringement Chart annexed as Exhibits B-D embodies at lease one of the Subject Compositions.

93.     Digital music distributors also have the ability to assign International Standard Recording Code ("ISRC") to individual digital recordings. An ISRC is a unique identification system for sound recordings and music video recordings. Each ISRC code identifies a specific unique recording and can be permanently encoded into a product as a kind of digital fingerprint. Where available, the ISRC codes for the tracks are provided in Exhibits B-D.

94.     Upon information and belief, Defendants Apple, Amazon, and Google each maintain their own database in which they enter and/or maintain data pertaining to each track available for sale in their respective stores, including the name of the

song, artist, album, record label, track length, ISRC and the catalog ID they assign to the track.

95.    Defendants have reproduced, distributed, exported, and/or made the recordings identified on Exhibits B-D available for digital phonorecord deliveries through their stores, in the United States.

96.    Plaintiffs have not authorized any reproduction or distribution or exportation of the recordings of the Subject Compositions identified on Exhibits B-D.

97.    The various types of unauthorized reproductions, distributions, and/or digital phonorecord delivery configurations of each of the pirated recordings of the Subject Compositions made and/or authorized by Defendants are discussed briefly below.

### *Permanent Downloads*

98.    Permanent download means a digital transmission of a sound recording of a musical work in the form of a download, where such sound recording is accessible for listening without restriction as to the amount of time or number of times it may be accessed.

99.    Apple, Google, and Amazon have made available, reproduced, and distributed permanent downloads of the recordings of the Subject Compositions listed on Exhibits B-D to its customers.

100.    Apple, Google, and Amazon were unlawfully authorized and directed to do so by Cleopatra (directly and/or by its distributor).

101.    Reproducing or distributing permanent downloads of recordings of the Subject Compositions require licenses from the copyright owners of the Subject Compositions and all the Defendants failed to obtain such licenses for each entry on the Infringement Chart at Exhibits B-D.

102.    The reproduction and distribution of permanent downloads of recordings of the Subject Compositions by Apple, Google, and Amazon and the authorization of

this activity by Cleopatra, infringes Plaintiffs' exclusive reproduction and distribution rights under 17 U.S.C. § 106(1) and (3).

### *Promotional Clips*

103.   Defendants Apple and Amazon have a feature in their stores that allow users to interactive stream a sample, promotional clip, of the recordings that were available for sale as permanent downloads.

104.   These promotional clips are 30–90 seconds long and their purpose was to encourage the purchase of the tracks as permanent downloads.

105.   Apple and Amazon reproduced and distributed copies of the recordings of the Subject Compositions identified on Exhibits B-D as promotional clips in iTunes and Amazon Music Store.

106.   These promotional clips of recordings of the Subject Compositions are interactive streams that require a license from the copyright owners of the Subject Compositions and Defendants all failed to obtain such licenses for each entry on the Infringement Chart annexed as Exhibits B-D.

107.   Defendants Apple's and Amazon's reproduction and distribution of promotional clips of pirated recordings of the Subject Compositions, and authorization of this activity by Cleopatra, infringes Plaintiffs' exclusive reproduction and distribution rights under 17 U.S.C. § 106(1) and (3).

### *Server Copies*

108.   Cleopatra has, directly and/or though a distributor, delivered to Apple, Google, and Amazon a copy of each recording of the Subject Compositions identified on Exhibits B-D.

109.   Apple, Google, and Amazon have reproduced at least one copy of each recording of the Subject Compositions identified on Exhibits B-D on its servers.

110.   Apple, Google, and Amazon have made at least one copy of each recording of the Subject Compositions identified on Exhibits B-D available for sale as permanent downloads through iTunes, Google Play, and Amazon Music Store.

111.   Apple, Google, and Amazon were unlawfully authorized and directed to do so by Cleopatra (directly and/or by its distributor).

112.   Making server copies of any of the recordings embodying the Subject Compositions identified on Exhibits B-D requires a license from the copyright owners of the Subject Compositions.

113.   Defendants failed to obtain such licenses for each of the recordings embodying the Subject Compositions identified on Exhibits B-D.

114.   Apple's, Google's and Amazon's reproduction of server copies of pirated recordings of the Subject Compositions for sale of permanent downloads through iTunes, Amazon Music Store, and Google Play, and authorization of this activity by Cleopatra, as well the distribution of the server copies of pirated recordings of Subject Composition to Apple, Google and Amazon, by Cleopatra, infringes Plaintiffs' exclusive reproduction and distribution rights under 17 U.S.C. § 106(1) and (3).

### *Making Available*

115.   Defendants have made and continue to make available, or authorize making available, permanent downloads of the recordings of the Subject Compositions identified on Exhibits B-D to the public by delivering, uploading and/or offering them as permanent downloads through iTunes, Google Play, and Amazon Music Store.

116.   The Defendants' making available recordings of the Subject Compositions identified on Exhibits B-D for permanent downloads, and authorization of this activity, by Cleopatra, requires a license from the copyright owners of the Subject Compositions

117.   Apple, Google, and Amazon have made one copy of each recording of the Subject Compositions identified on Exhibits B-D available for sale as permanent downloads through iTunes.

118.   Apple, Google and Amazon were unlawfully authorized and directed to do so by Cleopatra (directly and/or by its distributor).

119.   Defendants failed to obtain such licenses for each recording of the Subject Compositions identified on Exhibits B-D and have thereby infringed Plaintiffs' exclusive distribution rights under 17 U.S.C. § 106(3) as a "deemed distribution." *A&M Records v. Napster*, 239 F.3d 1004, 1014 (9th Cir. 2001); *Perfect 10, Inc. v. Microsoft.com, Inc.*, 487 F.3d 701 718–19 (9th Cir. 2007).

### *Exportation*

120.   Exportation of phonorecords of a musical composition acquired within the U.S. requires authorization of the owner of the copyright of the musical composition under Section 602 of the Copyright Act. Exportation without the authority of the owner of the copyright in that composition is an infringement of the exclusive distribution rights under 17 U.S.C. § 106(3).

121.   Defendants have engaged in the unauthorized exportation of phonorecords of the Subject Compositions, acquired within the U.S., by digital phonorecord deliveries, or other means.

122.   Cleopatra is located in Los Angeles. Apple, Google, Amazon,  and Cleopatra (directly and/or through its distributor) have engaged in the exportation of phonorecords of each recording embodying the Subject Compositions listed on Exhibits B-D from the United States by digital phonorecord delivery, or other delivery of phonorecords.

123.   None of the Defendants obtained exportation authorization from the U.S. copyright owners of the Subject Compositions.

124.   Defendants' respective exportations of phonorecords embodying the Subject Compositions identified on Exhibits B-D infringe Plaintiffs' exclusive importation rights under 17 U.S.C. § 602 and distribution rights under 17 U.S.C. § 106(3).

### *Illegal Downloading Prior to Exportation*

125.   Defendants are engaged in a systematic process of illegally reproducing and distributing illegally downloaded pirated copies of recordings of the Subject Compositions in the U.S. prior to distribution or exportation of these works to the U.K.

126.   Some of the pirated recordings (those on the Classic Music International, Burning Fire, and Rolled Gold imprints) of the Subject Compositions provided by Cleopatra are exclusively made available for permanent downloads in Apple's, Google's, and Amazon's foreign digital music stores.

127.   Defendants have each reproduced and/or distributed server copies of the pirated recordings of the Subject Compositions in the U.S. and/or unlawfully authorized this activity, without any authority whatsoever to make these reproductions and/or distributions, the identical activity for which Ms. Thomas-Rassett and Mr. Tenenbaum were liable (see paragraphs 29-31 above).

128.   Any reproduction and/or distribution of pirated recordings of the Subject Compositions in the United States by Defendants, or authorization of this activity, without a license from the U.S. copyright owners is an infringement of the copyright owners' rights under 17 U.S.C. § 106(1) ("the owner of the copyright has the exclusive right to . . . reproduce the copyrighted work in copies or phonorecords."). Whatever foreign copyright laws may say, the U.S. Copyright Act governs reproductions in the U.S. and distributions or exportation from the U.S.

129.   Defendants' respective unauthorized reproductions and/or distributions of pirated recordings embodying the Subject Compositions in the U.S. prior to

exportation, and unlawful authorization of this activity by Defendants constitutes infringement of Plaintiffs' exclusive rights under 17 U.S.C. § 106(1).

**Willfulness**

130.   The infringing conduct of the Defendants is willful. Cleopatra knows that it does not have authority to reproduce, distribute or for importation of the recordings of the Subject Compositions listed on Exhibits B-D, or to authorize these actions by Apple, Google, and Amazon. Cleopatra has pirated thousands of recordings and sold them in the United States through iTunes, Google Play, and Amazon Music Store.

131.   Further, Apple, Google, and Amazon have had knowledge of their own infringing conduct and that of Cleopatra and has continued to work with Cleopatra and make digital phonorecord deliveries and other reproductions and distributions of the pirated recordings of the Subject Compositions that Cleopatra provided and/or were recklessly indifferent or willfully blind to their own infringing conduct.

132.   Apple, Google, and Amazon have willfully failed to employ adequate human resources, screening mechanisms, or use of digital fingerprinting technology to detect unlawfully duplicated recordings on iTunes, Google Play, and Amazon Music Store that these Defendants routinely uses for other services, for example, their "scan and match" services.

133.   In addition to the recordings identified on Exhibits B-D, there are believed to be many other pirated recordings of the Subject Compositions that Defendants have reproduced and distributed without authorization that Plaintiffs have not yet identified or that are no longer available on iTunes, Google Play or Amazon Music Store.

134.   The infringement by Defendants of each Subject Composition on each pirated recording identified in the Infringement Chart at Exhibits B-D began as of the date of upload, receipt, delivery to and/or reproduction by Apple, Google, or Amazon of server copies of the pirated recordings of the Subject Compositions designated for

26

reproduction and distribution by Cleopatra through iTunes, Google Play, or Amazon Music Store and, in many cases, continues to the present. The infringements identified in Exhibits B-D all occurred, and were first discovered, within three years of filing this Complaint.

135. By their conduct described above, Defendants have infringed and are continuing to infringe Plaintiffs' copyrights on a regular basis in violation of 17 U.S.C. §§ 101, 106, 115, 501, 602 *et seq*.

136. As a direct and proximate result of Defendants' infringement, Plaintiffs are entitled to elect either an award of actual damages, including Defendants' profits, or statutory damages under 17 U.S.C. § 504(c).

137. Defendants' infringement is and has been willful, intentional, purposeful and with willful disregard of the rights of Plaintiffs. Anything less than maximum statutory damage awards would encourage infringement, amount to a slap on the wrist, and reward Defendants for their willful infringement on a grand scale.

138. Plaintiffs are also entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

139. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting Defendants from reproducing, distributing, making available, importing and selling the pirated recordings of the Subject Compositions without license or authorization in violation of the Copyright Act.

### First Claim for Copyright Infringement
### Against Cleopatra and Apple

140.   Plaintiffs repeat every allegation of the Complaint.

141.   Plaintiffs  SA Music LLC and William Kolbert as Trustee of the Harold Harlen Trust claim that Defendants Cleopatra and Apple have unlawfully reproduced, distributed, made available, and exported unauthorized recordings embodying the Subject Compositions including, but not limited to, those identified in Exhibit B by the methods identified herein, and/or have unlawfully directed or authorized this activity.

142.   Defendants have thereby willfully infringed Plaintiffs' copyrights in the Subject Compositions in violation of the Copyright Act.

### Second Claim for Copyright Infringement
### Against Cleopatra and Amazon

143.   Plaintiffs repeat every allegation of the Complaint.

144.   Plaintiffs  SA Music LLC and William Kolbert as Trustee of the Harold Harlen Trust claim that Defendants Cleopatra and Amazon have unlawfully reproduced, distributed, made available and exported unauthorized recordings embodying the Subject Compositions including, but not limited to, those identified in Exhibit C by the methods identified herein, and/or have unlawfully directed or authorized this activity.

145.   Defendants have thereby willfully infringed Plaintiffs' copyrights in the Subject Compositions in violation of the Copyright Act.

### Third Claim for Copyright Infringement
### Against Cleopatra and Google

146.   Plaintiffs repeat every allegation of the Complaint.

147.   Plaintiffs  SA Music LLC and William Kolbert as Trustee of the Harold Harlen Trust claim that Defendants Cleopatra and Google have unlawfully reproduced, distributed, made available, and exported unauthorized recordings embodying the Subject Compositions including, but not limited to, those identified in Exhibit D by

28

the methods identified herein, and/or have unlawfully directed or authorized this activity.

148.   Defendants have thereby willfully infringed Plaintiffs' copyrights in the Subject Compositions in violation of the Copyright Act.

### Prayer for Relief

WHEREFORE, Plaintiffs respectfully request that judgment be entered against Defendants, jointly and severally, as follows:

1.   A declaration that Defendants have infringed Plaintiffs' copyrights in the Subject Compositions in violation of the Copyright Act;

2.   A declaration that each of Defendants' infringements was willful;

3.   At Plaintiffs' election, an award of Plaintiffs' actual damages, including Defendants' profits, or a separate award of statutory damages in amounts to be determined by the jury for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally;

4.   A permanent injunction barring the Defendants from continued infringement of Plaintiffs' copyrights in the Subject Compositions pursuant to 17 U.S.C. § 502; and

5.   Reasonable attorneys' fees and costs of this action, statutory pre-judgment interest, and such other relief as this Court may deem just and proper.

1

Dated:    New York, New York
            April 29, 2020

2

3

                        Respectfully submitted,

4

                By:      /s/   Allen Hyman

5

                        Allen Hyman (California State Bar No. 73371)
                        LAW OFFICES OF ALLEN HYMAN

6

                        10737 Riverside Drive
                        North Hollywood, CA 91602

7

                        Phone: (818) 763-6289
                        E-mail: lawoffah@aol.com

8

                        Matthew F. Schwartz  *(Pro Hac Vice Pending)*

9

                        Brian S. Levenson  *(Pro Hac Vice Pending)*
                        SCHWARTZ, PONTERIO & LEVENSON, PLLC

10

                        134 West 29th Street, Suite 1001
                        New York, New York 10001

11

                        Phone: (212) 714-1200
                        E-mail: mschwartz@splaw.us

12

                        E-mail: blevenson@splaw.us

13

                        Oren S. Giskan  *(Pro Hac Vice Pending)*
                        GISKAN SOLOTAROFF & ANDERSON LLP

14

                        90 Broad Street, 10th Floor
                        New York, New York 10004

15

                        Phone: (212) 847-8315
                        E-mail: ogiskan@gslawny.com

16

                        *Attorneys for Plaintiffs*

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR COPYRIGHT INFRINGEMENT AND DEMAND FOR JURY TRIAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Local Civil Rule 38, and otherwise, Plaintiffs respectfully demand a trial by jury on all issues so triable.

Dated:      New York, New York
            April 29, 2020

Respectfully submitted,

By:     /s/   Allen Hyman
        Allen Hyman (California State Bar No. 73371)
        LAW OFFICES OF ALLEN HYMAN
        10737 Riverside Drive
        North Hollywood, CA 91602
        Phone: (818) 763-6289
        E-mail: lawoffah@aol.com

        Matthew F. Schwartz  *(Pro Hac Vice Pending)*
        Brian S. Levenson  *(Pro Hac Vice Pending)*
        SCHWARTZ, PONTERIO & LEVENSON, PLLC
        134 West 29th Street, Suite 1001
        New York, New York 10001
        Phone: (212) 714-1200
        E-mail: mschwartz@splaw.us
        E-mail: blevenson@splaw.us

        Oren S. Giskan  *(Pro Hac Vice Pending)*
        GISKAN SOLOTAROFF & ANDERSON LLP
        90 Broad Street, 10th Floor
        New York, New York 10004
        Phone: (212) 847-8315
        E-mail: ogiskan@gslawny.com

        *Attorneys for Plaintiffs*